# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEN BURKE,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>A. ENENMOH, et al.,<br><br>　　　　Defendants.<br>_____/ | Case No. 1:10-cv-01584-LJO-SKO PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br><br>(Docs. 43 and 46)<br><br>OBJECTION DEADLINE: TWENTY-FIVE DAYS |

**Findings and Recommendations on Defendants' Motion for Summary Judgment**

### I.    Background

Plaintiff Ken Burke ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983 on September 1, 2010. This action for damages is proceeding against Defendants Enenmoh and Juarez ("Defendants") for violation of Plaintiff's right to medical care under the Eighth Amendment of the United States Constitution.

On July 24, 2013, Defendants filed a motion for summary judgment. (Doc. 46.) Plaintiff filed an opposition on August 7, 2013.[1] (Doc. 48.) After obtaining an extension of time, Defendants filed a reply on September 6, 2013, and their motion has been submitted upon the

---

[1] Concurrently with their motion for summary judgment, Defendants served Plaintiff with the requisite notice of the requirements for opposing the motion. *Woods v. Carey*, 684 F.3d 934, 939-41 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 960-61 (9th Cir. 1998).

record without oral argument.[2]  Local Rule 230(*l*).  (Docs. 50, 52.)  For the reasons set forth below, the Court recommends that Defendants' motion be granted on the ground that they did not act with deliberate indifference to Plaintiff's medical needs.

## II.     Legal Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) (quotation marks omitted); *Washington Mutual Inc. v. U.S.*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c)(1) (quotation marks omitted).  The Court may consider other materials in the record not cited to by the parties, but it is not required to do so.  Fed. R. Civ. P. 56(c)(3); *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001); *accord Simmons v. Navajo County, Ariz.*, 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case.  *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)).  If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp.*, 627 F.3d at 387 (citing *Celotex Corp.*, 477 U.S. at 323).  This requires Plaintiff to "show more than the mere existence of a scintilla of evidence."  *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, *Soremekun v. Thrifty Payless, Inc.*, 509

---

[2] Plaintiff also filed a surreply on September 18, 2013.  (Doc. 53.)  While Plaintiff does not have the right to file a surreply, the Court has reviewed it and it does not alter the findings and recommendations set forth herein.

2

F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012).  The Court determines *only* whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner.  *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

**III.    Discussion**

    **A.    Plaintiff's Claim**[3]

The events at issue occurred at California Substance Abuse Treatment Facility and State Prison, Corcoran ("SATF") in Corcoran, California, where Plaintiff was incarcerated.  Plaintiff filed suit on September 1, 2010, alleging that he is on the prescription medication lamotrigine, which is a mood stabilizer.  Plaintiff alleges that he is supposed to take the medication twice a day and without the medication, he cannot control his emotions, he cries, he suffers from frustration and confusion, he is crippled emotionally and mentally, and he is unable to function properly.

Plaintiff alleges that the delivery of his prescription medication to him is repeatedly interrupted, causing him to miss dosages.  When Plaintiff asks the pill nurses for help, they tell him they are out of the medication, the doctor needs to reorder the medication, or some other "lame excuse;" and they leave him to suffer the effects from missing his medication.  (Doc. 1, Comp., pg. 5.)  Plaintiff alleges that his doctor, Dr. Burdick, always ensures he has a current prescription, so it is untrue that the doctor needs to reorder it.

Defendant Enenmoh, the Chief Medical Officer, and Defendant Juarez, the Chief Psychiatrist, responded to Plaintiff's inmate appeals regarding his missed dosages, allegedly

---

[3] Plaintiff's complaint is verified and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence.  *Jones v. Blanas*, 393 F.3d 918, 922-23 (9th Cir. 2004).  The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible in evidence.  Evidentiary issues are addressed, to the limited extent necessary, in the sections which follow.

1 placing them on notice of the issue.

**B.  Defendants' Undisputed Facts**[4,5]

1. During the events relevant to this action, Plaintiff was an inmate in the custody of the California Department of Corrections and Rehabilitation ("CDCR") at SATF. Plaintiff was transferred from SATF on May 15, 2011.[6]

2. Defendant Enenmoh is a medical doctor who was employed at SATF by CDCR as the Chief Medical Officer ("CMO") during the times relevant to the complaint. Defendant Enenmoh is still employed at SATF.

3. Defendant Juarez is a psychiatrist who was employed at SATF by CDCR as the Chief Psychiatrist and the acting Chief of Mental Health. Defendant Juarez is no longer employed by CDCR.

4. Plaintiff was most frequently diagnosed with Mood Disorder Not Otherwise Specified ("Mood Disorder NOS"). Mood Disorder NOS means that Plaintiff's symptoms do not fit all of the characteristics of Major Depression Disorder or Bipolar Disorder. At other times, Plaintiff was diagnosed with organic depression, which was associated with his other health concerns.

5. One of the medications prescribed to Plaintiff to treat his depressive symptoms was lamotrigine. Lamotrigine is an anticonvulsant drug used in the treatment of epilepsy, as well as mania and depression. Plaintiff was also prescribed citalopram (Celexa) and mirtazapine (Remeron), two anti-depressant and anti-anxiety medications.

6. As the CMO, Defendant Enenmoh had many duties, including managing and supervising the SATF medical staff, ensuring medical care policies were maintained and implemented, and conducting second-level reviews of health care Inmate/Parolee Appeal Forms submitted by inmates.

7. At times relevant to the complaint, approximately 10 to 20 inmate health care appeals

---

[4] Plaintiff did not address Defendants' statement of undisputed facts in his opposition and the facts are accepted as undisputed in the absence of any evidence controverting them. Local Rule 260(b).

[5] Defendants' request to file exhibits G and H, which contain Plaintiff's mental health records, under seal is granted.

[6] Plaintiff is currently incarcerated at California Health Care Facility, Stockton.

4

1 required review per day. The large number of appeals and Defendant Enenmoh's other duties
2 prevented him from conducting an independent investigation into each health care appeal at the
3 second level. A department existed to handle the investigations into and the analyses of the
4 appeals, and it was Defendant Enenmoh's duty to review the analysis and determine whether the
5 response was appropriate. If it was appropriate, he would sign the second-level response. If the
6 analysis was not complete, he would conduct his own investigation.

7 8. As the Chief Psychiatrist, Defendant Juarez had wide-ranging duties, including supervising
8 staff psychiatrists and ensuring compliance with program requirements. Defendant Juarez was
9 also the Clinical Director of the Mental Health Crisis Beds (MHCB), and he supervised the
10 development and implementation of clinical activities and standards for effective delivery of
11 mental health services in the MHCB. Defendant Juarez also conducted first and second-level
12 reviews of Inmate/Parolee Health Care Appeal forms that involved mental health medication
13 issues.

14 9. Defendant Juarez followed a protocol each time he responded to inmate appeals unless
15 special circumstances called for additional action. If responding at the first level, a staff
16 psychiatrist would complete a report, and Defendant Juarez would review the report and co-sign
17 the document. If Defendant Juarez conducted the second-level review, he would review the
18 inmate's Unit Health Record (UHR), appeal documents, and related documentation, and complete
19 a response.

20 10. Defendant Juarez, as the Chief Psychiatrist and acting Chief of Mental Health, and
21 Defendant Enenmoh, as the CMO, did not dispense medication directly to the inmates or directly
22 supervise the individuals who were responsible for dispensing the medication to the inmates.
23 Defendants Juarez and Enenmoh did not have the means, duty, or time to ensure that each
24 medication was dispensed from the pharmacy for every inmate and that each inmate received his
25 medication daily from the nurses.

26 11. Defendant Juarez was not the supervisor for the nursing and pharmacy departments, and
27 their staff did not report to him.

28 12. Defendant Enenmoh was not a psychiatrist at SATF, and he was not responsible for

5

diagnosing or treating inmates' mental health needs or for prescribing medications to treat inmates' psychiatric needs.

13.     During the relevant time period, SATF followed a general protocol for dispensing mental health medications to inmates.  Staff psychiatrists prescribed the necessary medications and renewed the prescriptions.  The prescriptions were then provided to the pharmacy and it was the pharmacy's responsibility to order the medications and distribute them to the nursing staff.  The nursing staff was then responsible for distributing the medications directly to the inmates.

14.     During the relevant time period, Defendant Juarez was not Plaintiff's assigned staff psychiatrist or primary care physician for mental health, and Defendant Enenmoh was not a psychiatrist or Plaintiff's primary care physician for mental health.

15.     Defendants Juarez and Enenmoh never personally denied Plaintiff dosages of lamotrigine nor did they witness anybody deny Plaintiff dosages of lamotrigine.

16.     Plaintiff filed an Inmate/Parolee Appeal Form on August 29, 2009.  The appeal was assigned log number SATF-33-09-15190.  In the appeal, Plaintiff stated that he was denied lamotrigine, and he asked five different nurses about it but he was told that the pharmacy did not send it over.

17.     Plaintiff filed another Inmate/Parolee Appeal Form on January 25, 2010.  The second appeal was assigned log number SATF-33-10-10391.  In the appeal, Plaintiff once again stated that he was denied lamotrigine and that the nurse said they were out of the medication.

18.     Both of these appeals complained of dosages that were missed before Defendant Enenmoh and Defendant Juarez became involved with the appeal or became aware of the missed dosages.

19.     Defendant Enenmoh's involvement with Plaintiff's missed dosages of lamotrigine was limited to his second-level reviews of Plaintiff's two appeals, and Defendant Juarez's involvement with Plaintiff's missed dosages of lamotrigine was limited to his first-level review of Plaintiff's second appeal.

20.     Defendant Enenmoh first became aware of Plaintiff's alleged missed dosages of lamotrigine on February 8, 2010, when he conducted the second-level review for Plaintiff's first appeal (SATF-33-09-15190).

6

21. Before Defendant Enenmoh provided his second-level review response, the informal response to the first appeal showed that the pharmacy had dispensed the medication on July 20, 2009, August 17, 2009, and September 1, 2009, and the medication was dosed twice daily with a thirty-day supply. On December 10, 2009, M. Kipp, R.N., completed a first-level review by interviewing Plaintiff and reviewing his medical records and medication administration record. She confirmed that lamotrigine was ordered through February 2010, and she confirmed that it would be dispensed twice per day. Records showed that the dosages missed from August 12 to August 15, 2009, were missed because Plaintiff was out to medical, and that on September 29, 2009, both dosages were dispensed by the pharmacy.

22. On January 26, 2010, P. Morgan, Psy.D., also looked into Plaintiff's missed dosages of medications.

23. Defendant Enenmoh subsequently provided his second-level review on February 8, 2010. As part of that review, D. Ybarra, RN CF, completed a comprehensive review of Plaintiff's medical records, pharmacy profile, appeal and attachments, and pertinent department policies. In addition, an informal review of Plaintiff's medication administration record for lamotrigine was conducted for missed dosages between August and December 2009. The missed dosages were listed in the appeal.

24. Corrective action was taken as part of Defendant Enenmoh's second-level review response. It was confirmed that Plaintiff's lamotrigine prescription was current, set for automatic refill, dispensed to the medical clinic every thirty days, and set to be dispensed to Plaintiff; and it was determined that lamotrigine was being dispensed to Plaintiff based on doctor's orders at the time.

25. Defendant Enenmoh also provided a second-level review for Plaintiff's second appeal, SATF-33-10-10391, on April 21, 2010. Before Defendant Enenmoh provided his second-level review, Plaintiff had been interviewed by Defendant Juarez and Dr. Burdick.

26. Defendant Juarez first became aware of Plaintiff's alleged missed dosages of lamotrigine on February 13, 2010, when he interviewed Plaintiff as part of the first-level review he conducted for the appeal. The issue had previously been addressed by Dr. Burdick, M.D., the staff psychiatrist who was treating Plaintiff, but Defendant Juarez, out of an abundance of caution, took

the additional step of personally interviewing Plaintiff regarding the missed dosages of lamotrigine.

27. Defendant Juarez always took the same steps when he reviewed a grievance about medication problems. Defendant Juarez confirmed that the inmate was prescribed the medication. If not, and the inmate should be prescribed the medication, Defendant Juarez would address it with a staff psychiatrist and the medication would be prescribed. If the medication was prescribed and current, Defendant Juarez would refer the issue to the nursing or the pharmacy department to be resolved and he would ensure the prescription was being dispensed.

28. As part of Defendant Juarez's normal practice in reviewing grievances, he reviewed the appeal documents, medical records, and medication administration record for continuity.

29. Defendant Juarez determined that Plaintiff was prescribed lamotrigine, and the prescription was current and remained current up to that time.

30. At the time of Defendant Juarez's first-level review of Plaintiff's appeal, California Correctional Health Care Services ("CCHCS") had in place a Drug Formulary. The CCHCS Drug Formulary included a list of medications approved for use in the CDCR institutions. Other medications were considered non-formulary. At that time at SATF, a medication needed to be approved by the Chief Psychiatrist if it was non-formulary.

31. At the time Defendant Juarez provided the first-level review of Plaintiff's appeal, lamotrigine was considered a non-formulary drug. It was available for restricted use and required approval by the Chief Psychiatrist. After Dr. Burdick's and Defendant Juarez's interviews with Plaintiff, it was determined that it was appropriate for Plaintiff to continue on lamotrigine.

32. After Defendant Juarez conducted the first-level review of Plaintiff's second appeal, interviewed Plaintiff, approved the continued prescription of lamotrigine, and ensured that Plaintiff's prescription was current, he was never informed that Plaintiff missed additional dosages of lamotrigine or suffered any serious medical issue because of the missed dosages of lamotrigine.

33. When Defendant Enenmoh thereafter reviewed Plaintiff's second appeal at the second level of review on April 21, 2010, Plaintiff's pharmacy records and appeal documents were again reviewed. A review of the medication reconciliation showed that at the time of the review, the

pharmacy was dispensing lamotrigine twice per day and the prescription was on auto-refill until June 9, 2010. The medication was set for Direct Observation Therapy, meaning that nurses were to ensure that Plaintiff received and ingested his medication. Custody staff was also to be visible for Direct Observation Therapy to ensure that inmates were compliant.

34. Plaintiff's second appeal complained of dosages of lamotrigine that were missed before Defendant Enenmoh conducted his review of the appeal. Defendant Enenmoh was not informed that Plaintiff missed additional dosages of lamotrigine after he conducted his two reviews of Plaintiff's appeals at the second level and ensured that the lamotrigine was current and being dispensed based on doctor's orders.

35. Defendant Juarez fulfilled his duties and obligations as the Chief Psychiatrist and acting Chief of Mental Health and as the first-level reviewer of the Plaintiff's grievance. Defendant Juarez did everything within his means to ensure Plaintiff would receive his dosages of lamotrigine.

36. Defendant Enenmoh fulfilled his duties and obligations as the CMO and as second-level reviewer of Plaintiff's grievances. Defendant Enenmoh did everything within his means to ensure Plaintiff would receive his dosages of lamotrigine.

37. Between August 2009 and March 2010, Plaintiff received more than twice the number of mental health appointments required by the Program Guide. In August 2009, he had an appointment with a psychiatrist. On September 11, 2009, he had an appointment with clinical social worker J. Conwell. On September 16, 2009, he had an appointment with a psychiatrist. On October 19, 2009, he had an appointment and Clark Adaptive Support Evaluation with clinical psychologist P. Morgan, Psy.D. On October, 20, 2009, and on October 30, 2009, he had appointments with clinical social worker J. Conwell. On November 4, 2009, he had an appointment with Dr. Burdick. On December 4, 2009, and on December 9, 2009, he had appointments with clinical social worker J. Conwell. On December 16, 2009, he had an appointment with J. Conwell and an Interdisciplinary Treatment Team (IDTT) appointment. On January 15, 2010, he had another appointment with clinical social worker J. Conwell. On January 26, 2010, he had an appointment with clinical psychologist P. Morgan, Psy.D, and on January 29,

9

1  2010, he had an appointment with clinical social worker J. Conwell. Plaintiff also received two
2  other psychiatric appointments with Dr. Burdick during that time period that were not dated but
3  were documented in the medical file.
4  38. In the majority of Plaintiff's encounters with mental health staff, he appeared to be stable
5  and he reported no mental health concerns.
6  39. Between August 2009 and March 2010, Plaintiff was also receiving blood draws
7  approximately four times a month, had many appointments with his primary care physician, and
8  encountered the nursing staff twice per day when he received his medications.
9  40. Between August 2009 and March 2010, no serious symptoms from Plaintiff's missed
10 dosages of lamotrigine were reported in the notes from Plaintiff's encounters with the mental
11 health staff.
12 41. During this time, Plaintiff's medical records did not show any serious mental health
13 incidents, manic episodes, or placements in a mental health crisis beds.
14 42. Plaintiff was continuously prescribed lamotrigine.
15 43. According to Plaintiff's medication administration record, between August 2009 and
16 March 2010, Plaintiff received approximately 97 percent of his prescribed dosages of lamotrigine,
17 excluding the dosages that Plaintiff likely missed because he did not report for his pills or because
18 he was away from the prison.
19 44. After Defendants Juarez and Enenmoh provided their initial reviews on February 8 and 13,
20 2010, Plaintiff received 336 out of the total 346 dosages of lamotrigine he was scheduled to
21 receive between February 8, 2010, and the end of July 2010. However, only 3 of the dosages were
22 missed when it appears Plaintiff presented for his pills and received the other medications he was
23 scheduled to receive (less than 1 percent of his dosages during this time period).
24 45. Within the community, the majority of patients are not 100 percent compliant with
25 medications; they are usually much less than 97 to 99 percent compliant and they do not suffer
26 serious side effects.
27 46. Lamotrigine has a half-life for a single-dosage of approximately 33 hours for a single dose
28 and 25 hours for someone taking routine dosages. This means that if a patient is taking 200 mg. of

lamotrigine per day and misses one day, the patient will still have half the medication in his system 25 hours later.

47. Between August 2009 and March 2010, with the exception of September 28 and 29, 2009, Plaintiff did not miss both dosages on the same day and he would still have had a significant amount of medication in his system during the times he missed medication.

48. Between February 8, 2010 and the end of July 2010, Plaintiff did not miss any consecutive dosages.

49. Between August 2009 and July 2010, Plaintiff was also receiving citralopram (Celexa), 60 mg. once per day, and mirtazapine (Remeron), 15 mg. once per day. Both of these medications are antidepressant and anti-anxiety medications. Therefore, both the citalopram and the mirtazapine would have been treating Plaintiff's depressive and anxiety symptoms and would have provided at least partial coverage even if the lamotrigine had been stopped.

50. Per Dr. Paizis, it was unlikely that Plaintiff suffered the symptoms he complained of in his appeals as a result of missing lamotrigine, that he suffered serious harm as a result of the dosages of lamotrigine he missed between August 2009 and March 2010, or that that he suffered side effects as a result of the small number of dosages of lamotrigine he missed after the initial appeal reviews completed by Defendants Juarez and Enenmoh.[7]

51. Per Dr. Paizis, Plaintiff was receiving all the necessary and reasonable mental health care for his mood disorder and it was consistent with the standard in the community.

### C. Legal Standard

The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners not only from inhumane methods of punishment but also from inhumane conditions of confinement. *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970 (1994) and *Rhodes v. Chapman*, 452 U.S. 337, 347,

---

[7] Plaintiff argues that the evidence provided by Dr. C. Paizis, who is an osteopathic physician and surgeon licensed with the Osteopathic Medical Board of California and employed as a senior psychiatrist, should be rejected because Dr. Paizis did not personally examine or treat Plaintiff and Dr. Paizis is biased due to her employment by CDCR. Plaintiff's objection to Dr. Paizis' testimony lacks support. Dr. Paizis is qualified to offer an expert opinion on Plaintiff's mental health issues and she is permitted to base that opinion on a review of Plaintiff's medical records rather than on direct, personal involvement in his care. Fed. R. Evid. 702, 703.

101 S.Ct. 2392 (1981)) (quotation marks omitted). While conditions of confinement may be, and often are, restrictive and harsh, they must not involve the wanton and unnecessary infliction of pain. *Morgan*, 465 F.3d at 1045 (citing *Rhodes*, 452 U.S. at 347) (quotation marks omitted).

Prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation, medical care, and personal safety, *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted), but not every injury that a prisoner sustains while in prison represents a constitutional violation, *Morgan*, 465 F.3d at 1045 (quotation marks omitted). To maintain an Eighth Amendment claim, inmates must show deliberate indifference to a substantial risk of harm to their health or safety. *E.g.*, *Farmer*, 511 U.S. at 847; *Thomas v. Ponder*, 611 F.3d 1144, 1151-52 (9th Cir. 2010); *Foster v. Runnels*, 554 F.3d 807, 812-14 (9th Cir. 2009); *Morgan*, 465 F.3d at 1045; *Johnson*, 217 F.3d at 731; *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

For claims arising out of medical care in prison, Plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." *Wilhelm v. Rotman*, 680 F.3d 1113, 1122 (9th Cir. 2012) (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)).

**D.    Findings**

**1.    Objective Element**

The Court rejects Defendants' argument that Plaintiff did not have an objectively serious medical need. The existence of an injury that a reasonable doctor would find important and worthy of comment or treatment, the presence of a medical condition that significantly affects an individual's daily activities, and/or the existence of chronic or substantial pain are indications of a serious medical need. *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted). In this case, there is no dispute that Plaintiff has a diagnosed a mental health condition requiring medication, including lamotrigine, for his depressive symptoms, and the Court finds that the existence of that mental health condition satisfies the objective element of Plaintiff's claim.

## 2. **Subjective Element**

The focus in this case is whether Defendants acted with deliberate indifference to Plaintiff's medical need for lamotrigine as related to his complaints of missed dosages. Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett*, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012) (citation and quotation marks omitted); *Wilhelm*, 680 F.3d at 1122. "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer*, 511 U.S. at 844-45 (internal quotation marks and citations omitted). Thus, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if harm ultimately was not averted." *Id.* at 844.

Defendants have submitted evidence demonstrating that once they were put on notice via Plaintiff's inmate appeals that Plaintiff had missed dosages of lamotrigine, they took appropriate action to ensure that his prescription was approved, current, and being dispensed by the pharmacy. Defendants, both of whom held supervisory positions at SATF, were not Plaintiff's treating physicians or psychiatrists, and their actions were confined to reviewing and addressing Plaintiff's inmate appeals.

Defendant Enenmoh issued a second-level decision on Plaintiff's first inmate appeal on February 8, 2010. In conjunction with the second-level review and decision, Plaintiff's lamotrigine prescription was confirmed to be current and set for automatic refill, and the prescription was being dispensed to Plaintiff per doctor's orders.

With respect to Plaintiff's second inmate appeal, Defendant Juarez issued a first-level decision on March 12, 2010. Defendant Juarez personally interviewed Plaintiff regarding the missed dosages at issue in his appeal. By that time, lamotrigine was non-formulary and its use was restricted, requiring the approval of the Chief Psychiatrist. Defendant Juarez and Plaintiff's

1 treating psychiatrist, Dr. Burdick, determined that it was appropriate for Plaintiff to continue using
2 lamotrigine, and Defendant Juarez ensured Plaintiff's prescription was current.

3 Defendant Enenmoh subsequently issued a decision on the appeal at the second level on
4 April 21, 2010. At that time, it was confirmed that the pharmacy was dispensing lamotrigine
5 twice a day and the prescription was on automatic refill until June 9, 2010.

6 Defendants attest that they did not have any knowledge that after their involvement in
7 reviewing and addressing Plaintiff's inmate appeals, Plaintiff continued to have further issues with
8 missed dosages of lamotrigine.

9 Based on the evidence submitted by Defendants, the Court finds that they have shown that
10 they acted reasonably in response to Plaintiff's inmate appeals regarding missed dosages of
11 lamotrigine and they did not act with deliberate indifference. The burden therefore shifts to
12 Plaintiff to submit admissible evidence demonstrating the existence of material factual disputes
13 precluding summary judgment.

14 Plaintiff has not done so.[8] Plaintiff may not rely on the general, conclusory assertions set
15 forth in his complaint to counter Defendants' specific evidence regarding the steps they took to
16 address Plaintiff's appeals and to ensure his lamotrigine prescription was current and the
17 pharmacy was dispensing the medication. *In re Oracle Corp.*, 627 F.3d at 387. Plaintiff has not
18 submitted any evidence refuting Defendants' description of the steps they took to address his
19 complaints about inconsistent lamotrigine dispensation, and Defendants may not be held liable for
20 missed dosages which occurred before and/or after they acted and of which there is no evidence
21 they had knowledge. *Farmer*, 511 U.S. at 844. There is no vicarious liability under section 1983,
22 and Plaintiff has not submitted any evidence demonstrating a link between a violation of his right
23 to medical care and actions or omission by Defendants. *E.g.*, *Lemire v. California Dep't of Corr.*
24 *and Rehab.*, 726 F.3d 1062, 1074-75 (9th Cir. 2013). To the contrary, Defendants have
25 demonstrated that they acted reasonably under the circumstances. *Farmer*, 511 U.S. at 844

---

[8] Plaintiff's opposition and surreply are unverified, and as a result, Plaintiff's arguments set forth therein have no evidentiary value. *Jones*, 393 F.3d at 922-23.

.

Accordingly, the Court finds that Defendants are entitled to summary judgment on Plaintiff's claim that they acted with deliberate indifference to his mental health needs relating to missed dosages of lamotrigine.[9]

### IV.     Conclusion and Recommendation

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, filed on July 24, 2013, be GRANTED, thus concluding this action in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty-five (25) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections must be filed within **ten (10) days** from the date of service of the objections.  Local Rule 304(d).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **January 21, 2014**                    /s/ Sheila K. Oberto
                                                UNITED STATES MAGISTRATE JUDGE

---

[9] In light of the Court's finding that Defendants did not knowingly disregard Plaintiff's mental health needs, the Court does not reach Defendants' argument that Plaintiff was unharmed by the missed dosages or that they are entitled to qualified immunity.